# EXHIBIT
# "1"

# STATE OF NORTH CAROLINA

__GUILFORD__ County

File No.
22 CVS 2439

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>MARY A. BARNHILL as Administratrix of the Estate of<br>KAREN FAYE ROLLINS BARNHILL, | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *Address*<br>280 S. Magnum St, Ste 400 | |
| *City, State, Zip*<br>Durham, NC 27701 | G.S. 1A-1, Rules 3 and 4 |

**VERSUS**

| | |
|---|---|
| *Name Of Defendant(s)*<br>ACCORDIUS HEALTH AT GREENSBORO, LLC d/b/a<br>ACCORDIUS HEALTH AT GREENSBORO; ACCORDIUS<br>HEALTH, LLC; GREENSBORO TWO PROPCO, LLC, | *Date Original Summons Issued*<br><br>*Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1*<br>ACCORDIUS HEALTH AT GREENSBORO, LLC d/b/a ACCORDIUS<br>HEALTH AT GREENSBORO<br>Interstate Agent Services LLC, Registered Agent<br>6047 Tyvola Glen Circle Ste 100<br>Charlotte, NC 28217<br>*Via Fedex* | *Name And Address Of Defendant 2* |
|---|---|

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Elizabeth C. Todd<br>Law Offices of James Scott Farrin<br>280 S. Magnum St, Ste 400<br>Durham, NC 27701<br>etodd@farrin.com | *Date Issued*<br>3-24-22 | *Time*<br>10:58 ☒ AM ☐ PM |
|---|---|---|
| | *Signature*<br>Deborah Pena | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐<br>**ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time*<br>☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have* **MANDATORY ARBITRATION** *programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

NORTH CAROLINA

GUILFORD COUNTY

F I L E D

2022 MAR 24  A 10: 38

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CVS 2439

| | |
|---|---|
| MARY A. BARNHILL as Administratrix<br>of the Estate of KAREN FAYE<br>ROLLINS BARNHILL, | ) |
| | ) |
| Plaintiff, | ) |
| | )  **COMPLAINT** |
| v. | ) |
| | )  (Jury Trial Demanded) |
| ACCORDIUS HEALTH AT | ) |
| GREENSBORO, LLC d/b/a ACCORDIUS | ) |
| HEALTH AT GREENSBORO; | ) |
| ACCORDIUS HEALTH, LLC; | ) |
| GREENSBORO TWO PROPCO, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

NOW COMES the Plaintiff, Mary A. Barnhill, Administratrix of the Estate of her mother,

Karen Faye Rollins Barnhill, by and through counsel, and hereby alleges and says:

## FACTS

1.      Plaintiff Mary A. Barnhill is a citizen and resident of Whiteville, Columbus County,

North Carolina.

2.      Plaintiff Mary A. Barnhill is the daughter and duly-qualified Administratrix of the

Estate of Karen Faye Rollins Barnhill, having been appointed by the Clerk of Superior Court of

Columbus County, North Carolina on December 3, 2020.

3.      In her capacity as Administratrix, Plaintiff Mary A. Barnhill is authorized and is

the proper party to bring this action on behalf of and for the benefit of the Estate of Karen Faye

Rollins Barnhill pursuant to N.C. Gen. Stat. § 28A-18-1, *et. seq.*

4.      Karen Faye Rollins Barnhill died on March 5, 2020 at the age of 57.

1

5.     At the time of her death, Karen Faye Rollins Barnhill was a resident of a skilled nursing facility operated under North Carolina Department of Health and Human Services ("NCDHHS") license number NH0275, bearing NCDHHS ID number 953201, and located at 1201 Carolina Street, Greensboro, Guilford County, North Carolina 27401-1303 known as Accordius Health at Greensboro ("Accordius," "Facility," or "Licensee"). While there, Mrs. Barnhill suffered personal injuries and death as a result of negligent care rendered by the Facility and Defendants collectively.

6.     Defendant Accordius Health at Greensboro, LLC is a North Carolina limited liability company with its principal place of business located in Greensboro, Guilford County, North Carolina.

7.     Defendant Accordius Health, LLC is a foreign limited liability company, registered in North Carolina, with its principal place of business located in Greensboro, Guilford County, North Carolina.

8.     Defendant Greensboro Two Propco, LLC is a North Carolina limited liability company with its principal place of business located in Greensboro, Guilford County, North Carolina.

9.     Each of the Defendants can be served with service of process via their Registered Agent: Interstate Agent Services, LLC 6047 Tyvola Glen Circle, Suite 100, Charlotte, Mecklenburg County, North Carolina 28217.

10.     Defendants Accordius Health at Greensboro, LLC, Accordius Health, LLC, and Greensboro Two Propco, LLC (hereinafter collectively referred to as "the Defendants") conducted business in the State of North Carolina and were engaged, individually and/or in joint ventures, joint enterprises, partnerships, or through employment/agency relationships whereby each

2

individual defendant was acting in the course and scope of its employment/agency with the other defendants, to act as a single purpose enterprise to own, lease, operate, staff, manage, maintain, and/or control, in whole or in part, a skilled nursing facility, known as "Accordius Health at Greensboro" (hereinafter referred to as "Accordius"), located at 1201 Carolina Street, Greensboro, Guilford County, North Carolina.

11.     The Defendants exercised substantial control over the operations and management of Accordius by substantially engaging in, participating in, and controlling the fiscal budgeting (including the creation, setting, funding and implementation of budgets and expenditures for staffing), oversight, revenue targets, risk management, regulatory compliance, implementation and enforcement of policies and procedures, consultation, and creation and development of business relationships with related parties.

12.     Each of the operational and managerial functions performed by Defendants had a direct impact on the level and quality of care provided to the residents of Accordius, making each Defendant responsible for the negligent acts and omissions of the other Defendant(s) as they relate to Accordius.

13.     In engaging in the conduct described herein, the Defendants were acting with the express or implied knowledge, consent, authorization, approval, and/or ratification of their co-defendants.

14.     The Defendants are therefore vicariously liable for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including their employees, agents (actual or apparent), consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries and death of Karen Faye Rollins Barnhill. Furthermore, the Defendants are directly liable for the acts and/or

3

omissions contained herein due to the direct control, ownership, and/or management of the operations of Accordius.

15.     The negligent acts and omissions described below were committed by officers, directors, managers, members, employees, servants, and/or agents (actual or apparent) of the Defendants, working in the course and scope of their office, directorship, managerial position, membership, employment, servitude, and/or agency with the Defendants. Therefore, those negligent acts and omissions are imputed to the Defendants. In the alternative, the staff members of Accordius were borrowed servants of the Defendants.

16.     At all times relevant hereto, Accordius was a 105-total operational bed facility.

17.     At all times relevant hereto, the Defendants operated nursing facilities, including Accordius, which were licensed and regulated by the State of North Carolina under Chapter 131E of the North Carolina General Statutes.

18.     At all times relevant hereto, the Defendants were in the business of operating nursing homes, including Accordius.

19.     At all times relevant hereto, the Defendants engaged in the custodial care of elderly individuals who were chronically infirmed, mentally impaired, and/or in need of nursing care and treatment.

20.     At all times relevant hereto, the Defendants were responsible for the daily operations of nursing homes, including Accordius.

21.     At all times relevant hereto, the Defendants provided nurse consultants to its nursing homes, including Accordius, who were responsible for quality assurance and overseeing the survey and/or inspection process.

4

22.    At all times relevant hereto, the Defendants, through their clinical teams and staff, were responsible for monitoring resident care at their facilities, including Accordius.

23.    At all times relevant hereto, the Defendants represented to the public, and to Karen Faye Rollins Barnhill and her family members, that Accordius was a licensed, certified, qualified, and professional skilled nursing facility having employees with special training, experience, knowledge, and expertise in caring for people who required skilled nursing care and who were either limited or unable to care for and to make appropriate decisions for themselves.

24.    The Defendants and their employees, servants, and/or agents (apparent or actual) held themselves out to be qualified and competent in all matters relating to the residential and rehabilitative care, treatment, and protection of the aged and infirmed, and held themselves out as having the ability to accept and properly care for patients like Karen Faye Rollins Barnhill.

---

## Clinical Programs

Comprehensive skilled nursing services are provided by each center's professional team of Registered Nurses, Licensed Practical Nurses, Certified Nursing Assistants, and others. Individualized care plans are designed to meet the specific needs of each patient and may include...

---

25.    At all times relevant hereto, the Defendants represented to the public that Accordius provided personalized care plans for each of its residents, designed specifically to meet each resident's needs.

5



26. At all times relevant hereto, the Defendants represented to the public that Accordius's sole motivation as a business is ensuring a better life for people in their care.

27. At all times relevant hereto, the Defendants represented to the public that "care is our labor of love," and in every decision and at every level of operation, there's only one question that counts: What will ensure a better life for the people in our care?"

28. At all times relevant hereto, the Defendants represented to the public that among its operating philosophies were: "People before paperwork; Care before corporate; Relief before regulations." In stating this philosophy to the public, including to Mrs. Barnhill and her family members, upon information and belief, Accordius was attempting to convince potential residents that it eschews proper medical documentation and adherence to Federal Regulations in providing care to its residents.



6

29.     At all times relevant hereto, the Defendants represented to the public, and to Mrs. Barnhill and her family members, that care decisions were <u>not</u> made by corporate officials, but rather, that care decisions are made solely with the resident's care in mind.



30.     At all times relevant hereto, the Defendants represented to the public, and to Mrs. Barnhill and her family members, that the staff at Accordius was "committed to doing the right things for the right reasons." Adding, "Our clinical team makes no compromises, offering careful, comprehensive care every step of the way."

31.     At all times relevant hereto, the Defendants represented to the public, and to Mrs. Barnhill and her family members, that the staff at Accordius provided "medical care which meets the highest legal and ethical standards in the field." Adding that its corporate compliance program is designed to "promote the prevention, detection, and resolution of any acts that do not conform to applicable federal and/or state laws, rules, and regulations."

7



## Commitment to Excellence

**Accordius Health is committed to providing medical care which meets the highest legal and ethical standards in the field.**

Our corporate compliance program is designed to promote the prevention, detection, and resolution of any acts that do not conform to applicable federal and/or state laws, rules, and regulations.

We employ education, documentation, and reporting measures to ensure that our residents are treated with only honest and responsible care.

32.     At all times relevant hereto, the Defendants assured the public, and Mrs. Barnhill and her family members, that Accordius ensures that their "residents are treated with only honest and responsible care." At the same time Accordius was assuring the public that it prohibits all acts that do not conform with applicable federal regulations, Accordius was informing the public that it would reject regulations that interfered with providing "relief" to residents.



8

33. At all times relevant hereto, the Defendants assured the public, and Mrs. Barnhill and her family members, that Accordius's culture as a corporation requires its work for the "greater good of humanity," as well as the "radical changes needed for the [nursing home] industry to survive[.]" Accordius assures the public that it strikes "the important balance between business process and caring for people."



34. At all times relevant hereto, the Defendants intended for members of the public to rely on the statements and reviews it placed in its marketing materials, and to believe the truth of the statements contained therein.

35. Upon information and belief, members of the public, including Karen Faye Rollins Barnhill and her family, relied on the marketing and public relations materials published by the Defendants in choosing to place Mrs. Barnhill in the facility.

36. At all times relevant hereto, the Defendants accepted private and government-run health insurance payments for service, including Medicare and Medicaid.

37. At all times relevant hereto, the Defendants and/or their employees, servants, and/or agents (actual or apparent) provided nursing and rehabilitative care to Karen Faye Rollins Barnhill and/or supervised the nursing and rehabilitative care provided to Karen Faye Rollins Barnhill.

9

38. At all times relevant hereto, the Defendants' employees, servants, and/or agents (actual or apparent) were responsible for the treatment, care, assessment, monitoring, and/or maintenance of Karen Faye Rollins Barnhill.

39. At all times relevant hereto, the Defendants expressly and implicitly represented to the public and to Karen Faye Rollins Barnhill and her family members that they furnished nursing and rehabilitation services in a skilled and proper manner and that their employees, servants, agents (actual or apparent), independent contractors, and all other persons subject to all applicable rules, regulations, bylaws, contracts, and standards, including but not limited to the Defendants' own internal standards, possessed that degree of professional education, skill, and ability ordinarily possessed by other nursing homes and rehabilitation facilities similarly situated in the same or similar communities.

40. At all times relevant hereto, the Defendants, expressly and by implication, agreed that they had the responsibility and non-delegable duty to ensure the health, safety, and welfare of their residents, including Karen Faye Rollins Barnhill, in accordance with the governing standards of care and the rules, regulations, and laws governing such nursing facilities as made applicable by the State of North Carolina, the Commission on the Accreditation of Rehabilitation Facilities, the Joint Commission on the Accreditation of Healthcare Organizations, and the United States of America.

41. At all times relevant hereto, the Defendants had responsibilities and non-delegable duties to their residents, including Karen Faye Rollins Barnhill, which included, but were not limited to, the following:

  a. to provide adequate staffing methods so as to provide quality care to each resident;

10

b.      to staff the facility to meet the needs of each resident at all times;

c.      to review and monitor resident acuity levels and ensure staff sufficiency to meet each resident's needs;

d.      to create, set, provide, and implement budgets and financial policies that allowed Accordius to meet the needs of its residents;

e.      to budget for and provide adequate nursing staff to meet each resident's needs;

f.      to meet governmental staffing requirements;

g.      to make planning-level decisions that provided for and met the needs of its residents;

h.      to keep each resident free from neglect, mistreatment, or abuse;

i.      to ensure each resident maintains the highest practicable physical, mental, and psychosocial well-being;

j.      to supervise and ensure the maintenance of health and safety standards, including but not limited to appropriate nursing assessments and interventions;

k.      to establish, implement, maintain, and enforce procedures in the areas of resident care and accident prevention;

l.      to develop written policies and practices and to ensure their compliance so as to provide comprehensive programs designed to meet the individual needs of the individual residents as fully as possible and to see that those policies were implemented in fact;

11

m.   to ensure compliance with all regulatory agencies and the guidelines adopted to ensure the safety of the residents;

n.   to supervise the administration of training and education of the persons responsible for the care and treatment of the residents;

o.   to define the staff's responsibilities, policies, and procedures in order to assure compliance with the standards of care;

p.   to assure that the facility safeguarded the residents' rights;

q.   to properly hire, screen, retain, train, and/or supervise their entire staff, including the nursing staff;

r.   to hire and/or retain only employees who are competent and fit to provide care to nursing home residents;

s.   to establish comprehensive, individualized care plans for each resident;

t.   to implement all plans of care and to ensure compliance therewith;

u.   to update or revise all plans of care when needed;

v.   to be aware of which patients were at risk for skin breakdown and to know how to prevent skin breakdown and protect residents from infections due to skin breakdown;

w.   to be aware of antibiotic medications' efficacy, and to discontinue improper antibiotic therapy and obtain antibiotics for their residents that would be safe and effective, and

x.   to monitor the condition of and, when necessary to provide appropriate care to the resident, discharge the resident to an emergency department for care.

12

42. At all times relevant hereto, the Defendants received management fees and other compensation or payments from nursing homes, including Accordius.

43. At all times relevant hereto, the Defendants were responsible for, participated in, and/or significantly engaged in, influenced, and directed the leasing, operations, control, management, staffing, fiscal budgeting, oversight, risk management, regulatory compliance, and the implementation and enforcement of policies and procedures of Accordius.

44. At all times relevant hereto, the Defendants were responsible for, participated in, and/or significantly engaged in, influenced, and directed the creation, setting, review, approval, implementation, and enforcement – and did, in fact, create, set, review, approve, implement, and enforce – the budgets for Accordius.

45. At all times relevant hereto, the Defendants, through the budgeting process, controlled, among other things, the number of staff at their nursing homes, including Accordius.

46. At all times relevant hereto, the Defendants knew the delivery of essential custodial services to residents, such as Karen Faye Rollins Barnhill, in their nursing homes, including Accordius, depended upon fundamental budgetary and operational decisions made, determined, controlled, monitored, and enforced by the Defendants, including:

      a.    the determination of the numbers and nature of staff and expenditures on staffing levels in the nursing home;

      b.    the determination of census (i.e., occupancy) levels within the nursing home; and

      c.    the determination of the census mix which established the amount of facility revenue and impacted the acuity level and care needs of the nursing home residents.

13

47.     At all times relevant hereto, in order to maximize revenue and profits, the Defendants imposed unreasonably low operational budgets, implemented perilous business policies and practices, and made unsafe planning-level decisions. These budgets, policies, and decisions deprived Accordius of the resources necessary to hire, train, and supervise enough staff to meet the needs of their residents. As a result, Accordius was undercapitalized and understaffed, and this, in turn, led to widespread neglect of its residents, including Karen Faye Rollins Barnhill.

48.     At all times relevant hereto, the Defendants' policies and practices required the aggressive recruitment, admission, and retention of high acuity residents and an increase in resident census.

49.     At all times relevant hereto, the Defendants substantially derived their revenue and profits from the receipt of taxpayer dollars through federally and state funded Medicare and Medicaid programs.

50.     At all times relevant hereto, the Defendants received Medicare, Medicaid, and/or other federal or state payments for the maintenance, monitoring, and care of their residents, including Karen Faye Rollins Barnhill.

51.     The rate at which a skilled nursing home accepts Medicare dollars for the delivery of nursing home care and services, and accordingly the amount of their ultimate revenue and profits, is normally based upon the acuity level of the residents in the facility.

52.     At all times relevant hereto, the Defendants understood and knew that under Medicare reimbursement and/or payment guidelines, residents with higher acuity levels (i.e., a greater number and degree of illnesses and care needs) were considered to place higher demands for care and services on the nursing home and its staff, and therefore, Medicare had higher payment or reimbursement rate for higher acuity residents.

14

53.    At all times relevant hereto, the Defendants knew that it would receive higher payment/reimbursement rates from Medicare for higher acuity residents.

54.    At all times relevant hereto, the Defendants had a financial incentive to maintain the highest possible occupancy and acuity levels at Accordius.

55.    In exchange for receiving Medicare reimbursements or payments, the Defendants were obligated to sufficiently staff Accordius based not only upon the number of residents residing in the facility, but also on the residents' total acuity level. Accordingly, the Defendants knew that they were obligated to provide more staff if its residents needed more services. In other words, the higher the total acuity level, the more staff the Defendants were obligated to provide.

56.    At all times relevant herein, in exchange for receiving reimbursement rates from Medicare, the Defendants knew that they were required to staff their facilities, including Accordius, to meet the needs of its residents.

57.    At all times relevant hereto, the Defendants were responsible for ensuring that Accordius had adequate numbers of properly qualified, trained, and supervised staff to meet the needs of its residents and to provide the care and services required by law.

58.    At all times relevant hereto, the Defendants knew that controlling staffing costs, the single largest expense in the nursing home industry, was vital to ensure increasing profit margins.

59.    At all times relevant hereto, the Defendants had a financial incentive to maximize occupancy and resident acuity levels, while at the same time minimizing patient care expenses, such as by not hiring and retaining adequate numbers of properly qualified, trained, and supervised staff.

60.    During the period of 2019-2020, which included Karen Faye Rollins Barnhill's residency, the Defendants failed to ensure, through their operational, budgetary, consultative, and

15

managerial decisions and actions, that Accordius was sufficiently staffed to meet the individual needs of its residents, including Karen Faye Rollins Barnhill.

61.     During the period of 2019-2020, which included Karen Faye Rollins Barnhill's residency, the Defendants failed to ensure, through their operational, budgetary, consultative, and managerial decisions and actions, that Accordius was sufficiently capitalized to meet the individual needs of its residents, including Karen Faye Rollins Barnhill.

62.     Despite representing to the public, including to Karen Faye Rollins Barnhill and her family, that "We are committed to placing our residents at the center of their care, clinical excellence, and enhancing quality of life in long term care," the Defendants extracted

 considerable profit through the management and operation of Accordius by paying management, administration, and consulting fees, as well as other "costs," such as rent, to other co-defendants and/or "related parties," as defined by the Centers for Medicare Services ("CMS"), from funds that should have been utilized to hire, train, retain, and supervise sufficient numbers of qualified staff to meet the needs of its residents, including Karen Faye Rollins Barnhill.

63.     Specifically, on information and belief, the Defendants, among other things, engaged in transactions with themselves and related parties whereby they were paid dollar amounts that far exceeded fair market value and were contrary to "prudent buyer" principles. By engaging in these business practices and transactions, the Defendants siphoned money and funds out of

Accordius, thereby depriving the facility of the resources necessary to meet the needs of their residents.

64.     On information and belief, in order to grow revenues and maximize profits, the Defendants:

        a.    tightly monitored and controlled the census/occupancy targets and levels in its nursing homes, including Accordius, on a routine basis;

        b.    established, monitored, and enforced census/occupancy, staffing, and labor costs targets, including those for Accordius, on a routine basis;

        c.    closely monitored resident discharges, transfers, and bed vacancies in their nursing homes, including Accordius, on a habitual and frequent basis; and

        d.    mandated that their nursing homes, including Accordius, routinely report their:

                i.    compliance with and variance from census/occupancy targets and objectives; and

                ii.    compliance and variance in staffing levels and labor costs that they established and approved for their nursing homes, including Accordius; and

        e.    refused to discharge residents who required more care than could be adequately provided in the facility when it appeared unlikely that the bed would be filled with another resident for whom payment would be made.

65.     On information and belief, the Defendants acted in accordance with Defendants' required census/occupancy edicts, staffing and labor cost restrictions, marketing, admission, and

discharge policies and procedures by filling empty beds, recruiting high acuity residents, and maintaining dictated occupancy and staffing levels.

66.     On information and belief, at all times relevant hereto, the Defendants' policies and financial decisions caused a dangerous gap between the care that was required to meet the needs of residents and the care that could actually be provided by the limited staff and resources at Accordius, thereby causing widespread neglect of residents, including Karen Faye Rollins Barnhill.

67.     At all times relevant hereto, the lack of staff, including specifically properly qualified, trained, and supervised staff, along with undercapitalization, at Accordius caused widespread neglect of residents, including Karen Faye Rollins Barnhill.

68.     At all times relevant hereto, the Defendants knew or should have known that Accordius did not have adequate numbers of qualified and properly trained staff to provide its residents with the care and services they required.

69.     On information and belief, despite their knowledge of the risks of harm and the actual harm caused to residents by their financial and business policies, practices, decisions, and conduct, the Defendants deprived their residents, including Karen Faye Rollins Barnhill, of adequate staffing and resources to meet their needs, which included, among other things: appropriate, effective, and individualized plans of care and compliance therewith; accurate assessment and prudent monitoring of their conditions; prudent supervision and monitoring; implementation of effective interventions for skin breakdown and infection from skin breakdown; prompt recognition of the potential dangers of catastrophic consequences from skin breakdown; and responding prudently and promptly when residents required emergent care by discharging them to the emergency department when transfer was clearly warranted.

18

70.     At all times relevant hereto, the Defendants engaged in a pattern and practice of siphoning funds from its individual facilities that could be used to hire competent staff in sufficient numbers to care for its residents.

71.     At all times relevant hereto, the Defendants engaged in a pattern and practice of siphoning funds from its individual facilities that could have been used to hire competent staff in sufficient numbers to care for its residents.

72.     Karen Faye Rollins Barnhill was admitted to Accordius Health at Greensboro on March 3, 2020 at approximately 5:30 p.m.

73.     Mrs. Barnhill was 57 years old, and admitted to Accordius from a hospitalization after a fall at home.

74.     Mrs. Barnhill suffered a subarachnoid hemorrhage in the fall at home. She also suffered a left humeral head fracture, for which her left arm was immobilized in a sling.

75.     While in the hospital, Mrs. Barnhill suffered another fall, and later a seizure for which intubation was required. She was successfully extubated, and had no problems on room air.

76.     Mrs. Barnhill had experienced a significant functional decline and required occupational therapy services to attempt to return her to her previous level of independence and safety.

77.     Mrs. Barnhill was noted to have a good rehabilitation potential as evidenced by her ability to make her needs known, compliance with skilled training, ability to learn new information, active participation in skilled treatment, active participation with plan of treatment, attention to tasks, high cognitive function and high level of function.

78.     Mrs. Barnhill reported a pain level of 10 out of 10 at all times in her left shoulder, even at rest.

19

79.     Mrs. Barnhill reported that she was in constant, terrible pain from her fractured left shoulder, and that movement of her left arm causing significantly more pain.

80.     Mrs. Barnhill was unable to use her left arm at all due to its fracture and its setting in a sling. She was unable to use her left extremity during therapy treatment.

81.     Mrs. Barnhill was noted to be a very high fall risk – and a very high risk for injuries from falls – given her history of falls, her injuries from falls, and her use of anticoagulant medication.

82.     Mrs. Barnhill was administered a Coumadin anticoagulant 5 mg tablet each day.

83.     Mrs. Barnhill was being administered Ciprofloxican HCI tablet 500 mg per day while she was a resident at Accordius.

84.     Well-known side-effects of Ciprofloxican are nausea, vomiting, diarrhea, and stomach pain.

85.     The nursing staff of Accordius knew or should have known the medications Mrs. Barnhill was administered.

86.     The nursing staff of Accordius knew or should have known the potential side effects of the medications Mrs. Barnhill was administered.

87.     On March 5, 2020, Mrs. Barnhill was found on the floor on her left side, beside her bed at or around 6:30 a.m. The Director of Clinical Services ("DCS") noted in Mrs. Barnhill's chart that "Patient alert, verbally responsive. *Denies any pain.*"

88.     It was well-documented that Mrs. Barnhill experienced pain at a level of 10 out of 10 while at rest. The DCS noted that Mrs. Barnhill left onto her left side, where her fractured shoulder was immobilized in a sling.

20

89. Upon information and belief, it is impossible for Mrs. Barnhill to not have experienced extreme pain as a result of falling onto her left side, as the DCS noted in Mrs. Barnhill's chart.

90. The DCS continued in her note that "Patient able to move all extremities upon request."

91. It was well-documented that Mrs. Barnhill was unable to move her left upper extremity, as it was immobilized in a sling.

92. Upon information and belief, it is impossible for Mrs. Barnhill to have moved her left upper extremity upon request, as the DCS noted in Mrs. Barnhill's chart.

93. Upon information and belief, as Mrs. Barnhill was noted to have fallen on her left side, she would have been unable to brace her body for the impact of the fall, because she could not extend her left arm. She would have fallen to the floor unable to put her left arm out to lessen the impact to her body, including to her head.

94. The DCS noted that Mrs. Barnhill stated that she was experiencing loose stool, which is a well-known side effect of Ciprofloxican, and receiving no assistance from the staff, she attempted to ambulate to the commode unassisted.

95. The DCS performed a check of Mrs. Barnhill's pupils at or around 6:30 a.m. No member of the Accordius staff performed a neurological check on Mrs. Barnhill after approximately 6:30 a.m.

96. Thought the DCS noted that Mrs. Barnhill was found at 0630 (6:30 a.m.), she did not document that Mrs. Barnhill actually fell at "sometime on night shift."

21

97. Upon information and belief, Mrs. Barnhill was not checked during the night shift beginning March 4, 2020, and fell during the night, laying on the floor until she was finally discovered at approximately 6:30 a.m.

98. Mrs. Barnhill's Accordius chart noted that Mrs. Barnhill was administered Juven at 9:41 a.m. Juven was to be administered before meals, meaning that Mrs. Barnhill had not been provided breakfast by 9:41 a.m. on March 5, 2020.

99. Upon information and belief, no member of the Accordius staff checked on, assessed, or saw Mrs. Barnhill between 6:30 a.m. and the administration of the Juven at 9:41 a.m.

100. Upon information and belief, no member of the Accordius staff assessed Mrs. Barnhill between 6:30 a.m. and approximately 11:40 a.m. on March 5, 2020.

101. Mrs. Barnhill's Accordius chart contains a note dated "3/5/20 14:32," (March 5, 2020 at 2:42 p.m.) which states: "Nurse noted [patient] vomiting yellow fluids [patient] *alert moving all extremities* [patient] continues to rub head forehead and moaning; Nurse assessed [patient] for pain [patient] just continued to moan."

102. The Accordius staff member who entered the note at 1432 p.m. did not note whether Mrs. Barnhill had any neurological impairments as a result of her fall, did not note that she assessed Mrs. Barnhill's neurological condition, did not note any bruising or hematomas to her face or head.

103. The Accordius staff member who entered the note at 1432 p.m. did note that Mrs. Barnhill was "alert moving all extremities." Upon information and belief, Mrs. Barnhill was unable to move her left upper extremity, was vomiting, and assuredly was not "alert" at the time she was assessed.

104. A follow-up note in Mrs. Barnhill's chart is dated "3/5/20 15:29," (March 5, 2020 at 3:29) which states, "Enty [sic] for 12noon; Nurse assessed [patient] at 1140 am called LVAD at

22

1150am reported to Sarah instructed nurse to send [patient] to ER for evaluation [patient] sent to ER at approx. 12 noon."

105. Upon information and belief, the staff member who called "Sarah" on "3/5/20 15:29" spoke with Sarah H., RN, and was only told that Mrs. Barnhill:

"is non responsive except moaning with painful stimuli. Nurse stated that the [patient] was fine this morning when she received her morning medications, but when she came in to check on the [patient] it appeared that she had vomited several times in the bed and on the floor. Nurse was instructed to call Guilford county EMS and have [patient] transported to the ED. Nurse verbalized understanding."

106. Both notes in Mrs. Barnhill's chart at 1432 and 1529 were signed by a staff member who is either an RN or an LPN. The notes are signed by the staff member with "RN/LPN" following her name.

107. Guilford County EMS was called at 12:02:09. EMTs were on the scene at 12:05:23.

108. The EMTs:

"Arrived on scene to find female patient sitting upright in bed appearing altered. NH staff on scene advised patient was not acting herself and was not responding to questioning or following commands. Patient would look up at EMS but not communicate with us ... NH staff reports the patient falling sometime on night shift but could not provide any information for same. Patient had a hematoma to the left eyebrow with no other injuries noted. Patient has history of subarachnoid injury in the past from falls along with left shoulder fractures. NH staff reports patient vomiting earlier ... Pupils were round, equal but sluggish to react."

23

109. Sarah H., RN, had to call Accordius after the EMTs arrived at the emergency department:

"to gather information regarding a fall that EMS reported on arrival to the ED. When questioned the nurse states that the [patient] did sustain an unwitnessed fall around 0630 this morning. *Nurse states that the DON assessed the [patient] and the [patient] stated she did not hit her head.* However, [patient] has large bruise/hematoma over her left eye. Nurse states that the [patient] was asymptomatic at this time. *The VAD team did not receive a call about the fall this morning, unfortunately [patient] has a significant head bleed and more than likely will not survive this incident.*"

110. Mrs. Barnhill did not survive the incident. She died on March 5, 2020 at 7:52 p.m. from the massive subdural hematoma caused by her fall at Accordius.

FIRST CLAIM FOR RELIEF
Medical Negligence:
Accordius Health at Greensboro

111. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

112. At all times material hereto, Defendant Accordius Health at Greensboro, and certain of its employees and agents were health care providers as that term is defined in Chapter 90 of the North Carolina General Statutes.

113. In providing health care to Karen Faye Rollins Barnhill, Defendant Accordius Health at Greensboro, and its employees and agents who were licensed healthcare providers, failed to use their best judgment in the treatment and care of Mrs. Barnhill; failed to use reasonable care and diligence in the application of their knowledge and skill to Mrs. Barnhill's care; and failed to provide health care in accordance with the standards of practice among members of the same health

24

care profession with similar training and experience situated in the same or similar communities at the time the health care was provided to Mrs. Barnhill.

114.     Defendant Accordius Health at Greensboro and its employees and agents who were healthcare providers, among other things, negligently, carelessly, and heedlessly caused Mrs. Barnhill to suffer painful and permanent injuries and death, and in so doing:

    a.     failed to protect Mrs. Barnhill from falls;

    b.     failed to protect Mrs. Barnhill from injury from falls;

    c.     failed to properly assess Mrs. Barnhill's condition as emergent;

    d.     failed to perform neurological assessments and checks as required;

    e.     failed to follow its policies and procedures to ensure quality care;

    f.     failed to use reasonable care under the circumstances to obtain proper medical treatment for Mrs. Barnhill;

    g.     failed to arrange for emergency transport to an emergency department for Mrs. Barnhill following a fall;

    h.     failed to keep Karen Faye Rollins Barnhill free of neglect;

    i.     failed to keep Karen Faye Rollins Barnhill free of mistreatment;

    j.     failed to adequately monitor Karen Faye Rollins Barnhill;

    k.     failed to prevent Karen Faye Rollins Barnhill from being injured;

    l.     failed to timely notify Karen Faye Rollins Barnhill's health care providers about significant changes in her medical condition;

    m.     failed to fully and appropriately notify Karen Faye Rollins Barnhill's health care providers about her fall and the conditions giving rise to significant changes in her medical condition;

25

n.    failed to timely notify Karen Faye Rollins Barnhill's family about significant changes in her medical condition;

o.    failed to fully and appropriately notify Karen Faye Rollins Barnhill's family about her fall and the conditions giving rise to significant changes in her medical condition;

p.    failed to prudently manage the nursing staff at the facility;

q.    failed to properly train the nursing staff at the facility;

r.    failed to properly train and supervise their employees, servants, and agents (actual or apparent) on falls preventions;

s.    failed to properly train and supervise their employees, servants, and agents (actual or apparent) on assessments of patients following a fall;

t.    failed to ensure that the nursing staff properly cared for, monitored, observed, and supervised Karen Faye Rollins Barnhill;

u.    failed to ensure that interventions were taken for Karen Faye Rollins Barnhill' safety;

v.    failed to provide adequate supervision of the nursing staff to ensure Karen Faye Rollins Barnhill received proper care and intervention by proper medical staff;

w.    failed to ensure that the nursing care rendered at the facility was in accordance with federal, state, and local standards and regulations;

x.    failed to ensure that optimal quality of care was provided in a safe environment for the facility's residents;

26

y.      failed to supervise the administration of training and education of the persons responsible for the care and treatment of the residents;

z.      failed to develop, implement, and sustain an effective Quality Assurance program;

aa.     failed to develop, implement, sustain, and enforce effective policies, procedures, and practices in, among other things, the areas of resident assessment, resident monitoring, resident supervision, and resident safety.

bb.     failed to provide adequate staffing to meet residents' needs;

cc.     failed to ensure that adequate nursing staff was available for the facility's residents;

dd.     failed to establish budgets that would provide for sufficient staffing at Accordius;

ee.     failed to meet government staffing requirements;

ff.     scheduled nursing staff in such a manner that they did not have the time and/or assistance necessary to properly care for and meet the needs of the facility's residents;

gg.     failed to adequately staff the facility to ensure that residents, including Karen Faye Rollins Barnhill, received timely, proper, and necessary interventions and care by proper medical staff;

hh.     failed to protect Karen Faye Rollins Barnhill from harm and death;

ii.     failed to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

27

jj.　failed to abide by the law, rules and codes of the State of North Carolina, including specifically 10 N.C. ADMIN. CODE 13D;

kk.　failed to develop written policies and practices and to ensure their compliance so as to provide comprehensive programs designed to meet the individual needs of the individual residents as fully as possible and to see that those policies were implemented in fact;

ll.　failed to define the staff's responsibilities, policies, and procedures in order to assure compliance with the standards of care;

mm.　otherwise failed to act reasonably under the circumstances; and

nn.　otherwise acted negligently as will be established during discovery and at trial.

115.　As a direct and proximate result of the above-described negligence of Defendant Accordius Health at Greensboro and its employees and agents, Karen Faye Rollins Barnhill suffered injuries to her person, and such injuries caused her great physical and mental pain and suffering and caused her to incur medical expenses for the treatment of her injuries.

116.　As a direct and proximate result of the above-described negligence of Defendant Accordius Health at Greensboro and its employees and agents, Karen Faye Rollins Barnhill suffered injuries to her person, and such injuries caused her death.

117.　The Defendants' above-described negligence directly proximately caused Karen Faye Rollins Barnhill to die unnecessarily.

118.　The Defendants' negligence as described herein directly and proximately caused Karen Faye Rollins Barnhill' death, and as a result, Plaintiff Mary A. Barnhill, on behalf of the

28

Estate of Karen Faye Rollins Barnhill, is entitled to recover damages under N.C. Gen. Stat. § 28A-18-2(b).

119.    Plaintiff is entitled to recover compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for the wrongful death of Karen Faye Rollins Barnhill proximately caused by the Defendants' negligence.

RULE 9(j) EXTENSION OF STATUTE OF LIMITATIONS
IN A MEDICAL MALPRACTICE ACTION

120.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

121.    Plaintiff timely requested an extension of the statute of limitations within which to obtain Mrs. Barnhill's medical records and have same reviewed in order to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure.

122.    The Motion was granted by the Honorable Susan E. Bray, Resident Superior Court Judge on January 27, 2022, extending the statute of limitations through and including July 1, 2022.

123.    This Complaint for medical negligence is timely filed.

SECOND CLAIM FOR RELIEF
Corporate Negligence:
Accordius Health, LLC
Greensboro Two Propco, LLC

124.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

125.    At all times material hereto, Defendants Accordius Health, LLC and Greensboro Two Propco, LLC ("Corporate Defendants") *were not* health care providers as that term is defined in Chapter 90 of the North Carolina General Statutes.

126.    At all times material hereto, the Corporate Defendants *were not* a nursing home licensed under Chapter 131E of the North Carolina General Statues.

29

127.     As the managers of the Facility, the Corporate Defendants had a duty to use reasonable care and diligence when managing the Facility. Specifically, the Corporate Defendants had a duty to ensure that Accordius Health at Greensboro had sufficient funds in its budget so that the Facility could properly care for its residents, including Mrs. Barnhill, and ensure that Facility staff were following its policies and procedures.

128.     The Corporate Defendants breached their duties of care by failing to ensure that Accordius Health at Greensboro had sufficient funds in its budget so that the Facility could properly care for its residents, including Mrs. Barnhill, and ensure that the Facility staff were following its policies and procedures.

129.     As a direct and proximate result of the above-described negligence of the Corporate Defendants, Karen Faye Rollins Barnhill suffered injuries to her person, and such injuries caused her great physical and mental pain and suffering and caused her to incur medical expenses for the treatment of her injuries.

130.     As a direct and proximate result of the above-described negligence of the Corporate Defendants, Karen Faye Rollins Barnhill suffered injuries to her person, and such injuries caused her death.

## RULE 9(j) COMPLIANCE
## AND MOTION FOR EXPERT QUALIFICATIONS (RE: Rule 9(j)(2))

131.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

132.     Plaintiff, through the undersigned counsel, objects to the requirement that she comply with Rule 9(j) of the North Carolina Rules of Civil Procedure in this case. Rule 9(j) effectively requires this Plaintiff to prove her case before factual discovery is even begun, denies this medical malpractice Plaintiff her rights of due process of law and equal protection under the law, the right to open courts, and the right to a jury trial, violates the separation of powers, and

30

confers an exclusive emolument on health care providers, in violation of the United States and North Carolina constitutions. As applied in this case, Rule 9(j) violates the Seventh and Fourteenth Amendments of the United States Constitution, and Article I, sections 6, 18, 19, 25 and 32 and Article IV, sections 1 and 13 of the North Carolina Constitution.

133.    Plaintiff objects to the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure on the grounds that a Rule 9(j) certification is not required in this case, pursuant to *Lewis v. Setty* and *Taylor v. Vencor, Inc.*

134.    Without waiving these objections, Plaintiff states that the conduct on the part of servants, agents, and/or employees of Defendants acting in the course and scope of their employment with Defendants that give rise to this Complaint, and all medical records pertaining to the alleged negligence that are available to Plaintiff after reasonable inquiry, have been reviewed by a person who is reasonably expected to qualify to testify pursuant to Rule 702 of the North Carolina Rules of Evidence and who has the opinion that the conduct on the part of the agents, servants, and/or employees of Defendants fell below the applicable standard of care and is willing to testify as such.

135.    If the Court later determines that Plaintiff's Rule 9(j) expert does not meet the requirements of Rule 702(b) or 702(c), Plaintiff will seek to have that person qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence, and Plaintiff hereby moves the Court, pursuant to Rule 9(j)(2), to so qualify that person.

NOTICE OF INTENT TO
ADD UNIDENTIFIED DEFENDANTS

136.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

137.    Plaintiff has made diligent efforts to identify all necessary and proper defendants to this action. More specifically, these named defendants are those whose acts and/or omissions

31

were negligent and/or otherwise tortious with respect to the care and treatment of, or in the staffing, supervision, administration, and direction of the care and· treatment of Karen Faye Rollins Barnhill during her residency at Accordius. To the extent certain persons or entities are not named, Plaintiff hereby gives notice that Plaintiff has intended that each and every person or entity who has a financial interest in, or any level of control (budgetary, managerial, financial, or otherwise) over, any of the named defendants be included as a defendant to this action.  To the extent any such person or entity has been omitted, such persons and entities (and/or those individuals who own, direct, or manage such entities) should take notice of Plaintiff's intentions to include them as a defendant. Plaintiff further alleges the existence of a sufficient nexus between one or more of the Defendants and such unintentionally omitted parties, such that those omitted parties are deemed to have sufficient notice of this action for purposes of relation back pursuant to N.C. R. Civ. P. l5(c).

## OBJECTIONS TO "CAPS" ON NONECONOMIC DAMAGES

138.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

139.    Plaintiff objects to N.C.G.S. § 90-21.19 ("the cap on noneconomic damages") as unconstitutional as applied in this case. The cap on noneconomic damages denies this medical malpractice Plaintiff, the right to a jury trial, due process of law, equal protection under the law, and the right to open courts, violates the separation of powers, and confers an exclusive emolument on health care providers, in violation of the United States and North Carolina constitutions. The cap on noneconomic damages violates the Seventh and Fourteenth Amendments of the United States Constitution and Article I, sections 6, 18, 19, 25 and 32 and Article IV, sections 1 and 13 of the North Carolina Constitution as applied in this case.

32

## DAMAGES

### Wrongful Death and Survival

140.  Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

141.  The negligent acts and omissions of Defendants, and their employees, servants, and/or agents (actual or apparent) as herein alleged, were a direct and proximate cause of Karen Faye Rollins Barnhill experiencing conscious physical pain and suffering and mental and physical pain and personal injury and damages in an amount to be proven at the trial of this matter, but are far in excess of $25,000.00.

142.  The Defendants' negligence as described herein directly and proximately caused Karen Faye Rollins Barnhill's death, and as a result, Plaintiff Mary Barnhill, on behalf of the Estate of Karen Faye Rollins Barnhill, is entitled to recover damages under N.C. Gen. Stat. § 28A-18-2(b).

143.  Plaintiff is entitled to recover compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for the wrongful death of Karen Faye Rollins Barnhill proximately caused by the Defendants' negligence.

144.  In the alternative, and in the event it is determined that Karen Faye Rollins Barnhill's death was not caused by the negligent acts of Defendants or their employees, servants, and/or agents (actual or apparent) as herein alleged, then Plaintiff asserts a survival claim against Defendants and are entitled to all those damages that Mrs. Barnhill could have recovered against Defendants had she lived, all in an amount in excess of $25,000.

### PUNITIVE DAMAGES

145.  Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

146.  The acts of Defendants that gave rise to Karen Faye Rollins Barnhill's injuries were accompanied by outrageous or aggravated conduct. Such conduct was the reckless or wanton

33

disregard of the safety of Karen Faye Rollins Barnhill. Such conduct was reasonably likely to result in injury to, and did in fact result in, the injury to Karen Faye Rollins Barnhill and her death.

147.    Specifically, Defendants engaged in the following reckless or wanton conduct that it knew or should have known was substantially certain to result in injury to Karen Faye Rollins Barnhill: Failed to allocate sufficient funds through the management and budget to allow for staffing at adequate levels to provide quality care and supervision to its residents and at levels necessary to meet the needs of its residents, including Karen Faye Rollins Barnhill; failed to provide training to its staff to ensure that its personal care staff prevented injuries to its residents, including Karen Faye Rollins Barnhill, and failed to provide training to its personal care staff to meet the needs of a resident following an injury; and failed to ensure that Karen Faye Rollins Barnhill did not suffer unnecessary pain, suffering, and physical injury.

148.    Plaintiff is entitled to recover punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for the personal injury to and wrongful death of Karen Faye Rollins Barnhill, proximately caused by the Defendants' negligence.

WHEREFORE, Plaintiff prays unto the Court as follows:

1.    That Plaintiff have and recover judgment against Defendants jointly and severally in an amount in excess of $25,000.00 for all damages alleged herein;

2.    That Plaintiff have and recover punitive damages against Defendants, jointly and severally, in an amount in excess of $25,000.00;

3.    That Plaintiff be granted a trial by jury on all issues so triable;

4.    That Plaintiff receive prejudgment interest from Defendants as of the date of filing of this Complaint, pursuant to N.C. Gen. Stat. § 24-5(b); and

5.    For such other and further relief as the Court deems just and proper.

34

This 22 day of March, 2022.

**LAW OFFICES OF JAMES SCOTT FARRIN**

*Attorneys for Plaintiff*

By: _____

Elizabeth C. Todd
North Carolina State Bar Number 23156
280 South Mangum Street, Suite 400,
Durham, North Carolina 27701
Telephone 800- 220-7321
Facsimile 800-716-7881

35